Mondayy April 18, The Judges delivered their opinions.
Judge Tucker.
The equity of the appellants in this pause depends upon several distinct questions both of fact and of law,
1. Whether there was any actual gift by Mrs. Susanna Fox, in her life-time, of the slaves in question, to her daughter, the wife of Richard Anderson ¶ It seemed, I thought, to be conceded, towards the close of the argument, that there was no evidence.of such a gift; nor have I been able to find any direct evidence in the record to thatefiFect; and the-presumption from circumstances is, I think, against it.
2. That if Mrs. Anderson was entitled only as a legatee, the executor, Mr. Fox, had assented to the legacy. This is flatly denied by the answers, and there is neither direct nor collateral evidence to contradict the answer.
3. That Mrs. Fox left assets sufficient-to pay all her debts without recourse to her slaves, which were specifically devised. Upon this point the evidence is very unsatisfactory. The executor swears, that the will of Mrs. Fox directs her just debts to be first paid, and authorises her-executors to dispose of any part of her estate for that purpose ; which is correct. He then proceeds to state, that his testatrix left only fourteen slaves^ whom he names, fve of which, also named, were sold, and the produce of the sale credited the estate; but the account to which he refers, has omitted a credit for one of them, named Charlotte» Another, whom he states to have been a runaway for a considerable t'ime, and to have been retaken; and that he would be sold for the use of the estate, is not mentioned in the account referred to, nor in any subsequent account. *259 H That the estate of his testatrix, after a full settlement of all accounts with him, is greatly indebted to him, as will “ appear by a certificate of the commissioners appointed for “ that purpose.” The account thus referred to, appears to have been submitted by an order of Louisa County Court, after the commencement of this suit, on his own motion, to six commissioners named by the Court, or any three of them, to whom it is referred to examine, state, and settle the same, and to make report thereof to the Court, which three of them accordingly did, at the next succeeding Court. The bill contains a prayer that Fox may “ settle “ his executorship of the estate of his testatrix»•” but does not suggest any fraud in the account rendered; probably, because it was after the bill was filed; nor is there any exception to the answer, to which it js said to have been annexed, nor was there any motion for a reference thereof to a commissioner, as perhaps ought to have been done, unless it was intended to accept it, altogether, as it stood. And, although a general replication was made to the answer, and a general commission awarded to take deposit tions, none appeared to have been taken, with a view to sitreharge, or falsify, the executor’s account. But the account is objected to as a mere ex parte proceeding, on the motion of the executor himself, without having been first summoned to render his account, and without any summons issued to the legatees, creditors, or other .persons interested, to appear and attend, and contest the settlement if they should think proper. This appears to he the course of the Ecclesiastical Courts in England, as cited by Mr. Wickham,(a) but I have strong grounds to believe has never been practised in this country, even in the former General Court, which united common law, chancery and ecclesiastical jurisdiction, within its powers, and was the Supreme Court in this country, until the revolution. To call in question a practice sanctioned by that of the Supreme Court of the country for perhaps a century, and never, that I know of, drawn in *260 question before the present occasion, is what I canno't pre -' sume to do. It ought,- therefore, I conceive, to be taken as prima facie evidence of the several charges, and credits therein contained. But Still, any person interested therein, may, I Concéive,be at liberty by a bill in equity to surcharge and falsify the whole, if capable of adducing satisfactory evi-> dence to that purpose. The present account, for example, ftiay be surcharged by a reference to the defendant’s own answer, which admits the sale of one of the negroes, (Charlotted) not credited in that account. It may, perhaps, be falsified also, if it be true, as suggested by the appellant’s counsel, (though possibly he may be mistaken,) that there - was in fact no bond from the testatrix to her executor. The presumption is against him upon the face of the account* Which states the amount Of the principal even to a farthing, and changes interest upon it from a particular day, which. Was probably the date of the bond. I mention it only to illustrate thy conception of the proper course in such cases-, Which I take to' be this : The party who wishes to open an executor’s account, (which has been returned and audited by commissioners appointed by the Court which granted the probate of the will,) by a bill in equity, in order to surcharge and falsify the account so audited and admitted to record, ought in his bill to suggest the grounds' Upon which he means to surcharge or falsify the account r and call for the inventory, appraisement, and account of sales of the estate, together with the vouchers in the hands of the executor. And, in case of any fraud, concealment, or diminution in the inventory, or in the accounts rendered, he ought to suggest the Same in his bill, and seek a discovery ; or, if any fraud or malpractice shall have been committed, or so supposed, in the payment of debts, or the -Settlement of accounts, or in the conduct of the sales, these things ought also to be specifically charged in the bill, that the executor may discover the sanie by his answer. And, upon a reference to the commissioner, the accounts so Audited and returned to the Court granting the probate, *261 ought to be admitted in every respect as just and true, except as to such articles as may be surcharged or falsified by the evidence produced to him.(1) In the present case, as there was no motion made for a reference to a cornmissioner, I am inclined to think it was not incumbent on the Chancellor to refer the accounts, (as I see no necessity for putting the parties to such an expense, where the accounts are neither long nor intricate,) were it not that the answer itself disclosed the omission above noticed, therein. This of itself was sufficient to direct a reference, and the omission to do so, was, I think, an error. Especially as there were some other reasons, arising also out of the answer, to suppose that the executor has not rendered as perfect an account of the assets which came to his hands, as possibly he might; or that he omitted to possess himself of such parts of the estate of his testatrix, as he notices'in the latter part of his answer.
As to the purchase of the negroes, Milley and her children, by the executor himself, I am by no means prepared to say, with the counsel for the appellants, that he is to be regarded as a mere trustee, as to the property of his testatrix, so exposed to sale, and purchased by himself. If this Court were to declare the law to be such in all cases, even-where there was an undoubted deficiency of assets, and, although the sale should have been made after due notice, at public auction, and with all possible fairness, it would probably be the immediate parent of a thousand suits in Chancery, to set aside such purchases, either in behalf of the legatees, distributees, or creditors; although, as fre *262 quently happens, the executor should have been largely is advance for his testator’s estate, and should have saved it from total ruin by his exertions. What would be the consequences of such a doctrine, if we were to declare that the progeny of a female slave, so purchased, at any distance of time, might be recovered against the representatives of a deceased executor, or those claiming under him ? The practice has been too general in this country, and has prevailed too long, to be now drawn in question, by analogy to the doctrines in England, concerning trustees of lands, or commissioners of bankrupt. For though executors and administrators are, to many purposes, considered as ■trustees in a Court of Equity, they are not so in all cases,(a) At the same time, I am free to declare, that I think there may be cases, where the sale of a slave by an executor may be avoided by a legatee, distributee, or creditor of the testator, as I have before said, during the last-term, in the case of Sale v. Roy,(b) from which opinion I have found no reason to depart.
It only remains to consider two other points :
The recovery by Joseph Fox is expressly denied both by that defendant and John Fox, the executor, to have been by collusion, I therefore think the bill was properly dismissed as to him. The suit for contribution, I understand, is still depending before the Chancellor. Nothing, therefore, ought to be said as to that point.
The next question is, whether the injunction ought to be dissolved at this stage of the proceedings. And I incline ■to think it ought not; for the damages against the sheriff who levied the execution and sold the slaves, appear to be Vindictive, rather than according to the value of the pro*perty as twice before sold at public-sale. And, if the complainants should, upon the final hearing of the cause, be entitled to relief, they would, in that case, be kept out of the money which they had wrongfully paid, for a long time. For these reasons, I do not think the injunction ought to be dissolved, and I concur -in the decree which *263 has been agreed to in conference by tire unanimous opinion of the Court.
Judge Roane.
There is no doubt but that the damages given in this case were vindictive, and that the jury in assessing them, had not a due regard to the injury actually sustained. This is evident from the testimony of three of the jurors themselves ; from a comparison of the sum recovered with the prices for which the slave in question lradt been twice sold at two several public sales; and from the offer of the appellant Anderson, to give her up with her increase, in lieu of the sum recovered. It is a case in which, I presume, even a Court of Law would, on a timely and proper application, have granted a new trial; as such Court would have had sufficient data from whence to infer that the verdict had greatly exceeded the standard of justice. But as to a Court of Equity, the case of Ross v. Pines,(a) informs us, that, although, in niatters of tort, a Jury is not bound to an exact calculation, yet, where a verdict is owing to sudden passion in the Jury, it ought not to bind; but it is the duty of the Chancellor, in such case, to moderate the verdict. In that case, this temper in the Jury was merely inferred from the enormity of the second verdict compared with the first, and confronted by the Judges’ certificate, that the verdict was against evidence: In this case, this temper is admitted by the jurors themselves, and is further manifested by a reference to the data just mentioned.
Notwithstanding this character of the verdict, however, if this were now a mere law case, as no motion for a new trial was made in the Court of Law, I should doubt whether this Court ought, on this ground, to interfere. Even the alleged circumstance, that Anderson received no notice from his co-plaintiff of the pendency of the suit againsi, him, and therefore did not defend it, would probably not furnish a just exception from the general doctrine. It ought not to affect a verdict duly obtained by the appellee, against a proper and sufficient party.
*264 But this is not a mere legal controversy. Circumstances exist in it which could not have been properly and availaply brought forward in the trial at law, and which are peculiarly proper for the interposition of equity. For exam-pie, the public sale of the slave in. question, and purchase by the executor, purported in him a complete legal title : but in equity it is more practicable and more proper than at law to, impeach that sale by an inquiry, (which will involve an account of the executorship,) whether it was rendered necessary for the payment of debts, and whether it was competent for the executor himself to purchase. On these grounds, ulterior to any existing in the case at law,, or at least existing more efficaciously in a Court of Equity, it is competent in such Court to impeach the verdict and demand a hearing of the case in equity, although a motion for a new trial was omitted to be made before the Court in which the verdict was rendered.
It is not.necessary to decide, how far an ex parte settlement of his accounts by an executor, with commissioners appointed by the County Court, on his motion, is valid. That question is very important, and I should require to be aided by a fuller argument than has yet been urged, were it now to be solemnly settled. I believe, however, that the usage and understanding of the country has been to give to such settlements some validity. But, as to the ease actually before us, I am clearly of opinion, that, after a suit is brought against an executor, the direct object of which is to inquire into and enforce a full and fair settlement’ of' his accounts before the Court of Chancery or its commissioners, the defendant shall not elude that object by slipping away into another County, and making an ex parte settlement by auditors appointed on his own motion. A settlement of this kind,’and made under these circumstances, shall not affect or arrest the avowed object of the suit, as before mentioned. I lay no stress upon the circumstance, that the record does not exhibit any particular motion on the part of the appellants for a reference of tho *265 accounts to a commissioner. The bill is always before ihe Chancellor, and it contains a prayer for an account. In the case before us, the settlement exhibited is not only of the character just mentioned, but it omits a credit of a negro, admitted by the answer of J. Fox to have been sold, belonging to the estate in question. This circumstance alone is conclusive, that a new account is necessary.
As to the general question, whether an executor can purchase slaves sold by himself at public sale, zuhen necessary for the payment of debts, neither is that question necessary to be decided in the case before us. The considerations on which the decisions cited on the part of the appellants are founded, appear to me to be important; but I am not, at present, prepared to say how far these decisions consist with the usage and understanding of this country upon this subject; or what might be the consequences of adhering, in cases of this hind, to tire principle stated jn those decisions, I have, however, no hesitation to say, that a purchase made by an executor of property sold by himself, in a case where in truth no sale was necessary, may be vacated. In the case of Ewer v. Corbet,(a) cited last term in the case of Sale v. Roy, the decision in which case entirely conformed to jt, it was held that a purchaser of personal goods from an executor shall not have his title impeached,for that it is not reasonable to put every pur- “ chaser from an executor to take an account of the lestau ioFs debts, and that, this would lay an embargo on per- “ sonal estates in the hands of executors, which would be “ attended with great inconvenience.” As to strangers who purchase from executors, these reasons hold very strongly; but, as to the executor himself, who is at all times conusant of the state of the testator’s affairs, the reason seems to fail; and, if an executor sells and purchases in himself property which he knows (or might know) he had no right to sell, he is not injured, and cannot complain, if his purchase under such circumstances, should be vacated. I have no difficulty, therefore, in saying, that *266 if the state of the testator’s assets in the case in question (whic-h will be ascertained by the account to be taken) did not justify the sale of this, or some other part of the pro-> petty devised to Richard Anderson, the sale itself should ge considered as if it had never been made.
As to contribution from the other legatees in this case, the plaintiffs have brought the cause to a hearing without including such legatees. Such contribution, therefore, (as between the parties to this suit,) cannot be decreed. Th© plaintiffs, however, will still have liberty to proceed against them, and, if their property be liable, may, in the final ar.rangernent in this suit, make an end of the whole case by obtaining against them also a decree for contribution.
It results from these ideas, 1st. That an account ought to be taken of the state of S. Fox's assets; 2dly« That if •that result should shew that the sale and purchase by J. Fox, of the slave in question, was made unwarrantably, and without necessity, (of which the Chancellor will judge on the report made to him by the commissioner,) the sale shall be considered as invalid, and the property in the said negro as having existed in Richard Anderson, at the time of the levying the execution under which she was purchased by the appellant, N. Anderson. This result would put an end to the cause, and call for a perpetual injunction to the judgment in question; and, 8dly, That if, on the contrary, the sale and purchase be justified, and the slave In question consequently considered to have belonged to f. Fox at the time of the sale to the appellant; the verdict in the trial at law, for the trespass, having been produced by Improper motives on the part of the Jury, and being for a sum greatly exceeding the yalue of the slaves, or any injury which the appellee has sustained by the trespass; a new trial ought to he granted, and the appellants made liable only for the sum recovered in such second trial. I am of opinion, therefore, that the decree be reversed as to John Fox, the injunction continued, and the cause remanded tq be proceeded in, in conformity with the ideas now stated;,
*267 •Judge Fleming
pronounced the following as the de'8 ree wliich had been unanimously agreed to in conference.
“ This Court having maturely considered* &c. is of opinion that the said decree is erroneous in dismissing the “ appellants’ bill as to the said John Fox, instead of direct- “ ing an account to be taken óf his administration of the es - 144 tate of his testatrix, the said Susanna Fox ; but that there 44 is no error in so much of the said decree as dismisses 44 the bill against the said Joseph Fox. Therefore, it is 44 decreed and ordered that so much of the said decree as “ is stated above to be erroneous, be reversed ; that so 44 much thereof as is stated not to be erroneous* be affirm- “ ed, &cs And this Court proceeding to make such de- “ cree as the said Superior Court of Chancery ought to 44 have pronounced, It is further decreed and ordered, 44 that the said Thomas Gardner, administrator as aforesaid “ of John Fox deceased, do make up before a commission-4,4 er to be appointed by the said Court of Chancery* a full 44 and true account of the said John Fox’s administra» 44 tion on the éstate óf the said Susanna Fox deceased, after 44 due notice to the adverse parties ; and that the Said cóm44 missioner make report thereof to the said Court of Chan-44 eery for further proceedings to be had thereon. And, if, 44 on such account, it should appear to the satisfaction of u the said Court that the sale of the slave Milky, in ques-44 tion in this suit, or any other part of the property be» 44 queathed to Richard Anderson in and by the last will of 44 the súd Sus anna Fox deceased* was necessary for the pay-44 ment of her debts, the sale made by* and purchase of th® 44 said slave Milley by the said John Fox, be confirmed ; 44 that, in that event, a new trial of the issue in the action 44 of trespass in the proceedings mentioned be awarded by, *4 and the verdict certified to, the Said Court óf Chance» 44 ry j with liberty to the appellant, Nelson Anderson* to be» ¿'4 come a party defendant in the said issue and defend the ** same; that, upon the return of the verdict aforesaid, if *268 “ the sum thereby recovered be of smaller amount than fr'e' u sum enjoined in this suit, the injunction be decreed “ to be perpetual for the excess, and dissolved as to the re- ■“ si due. But if the said account should ascertain (on the lt other hand) that neither tire said slave Millcy,- nor any u other part of the property of the said Richard Anderson, C£ derived under the will aforesaid, was- necessarily sold, i£ or liable to be sold, for payment of the debts of the said ££ testatrix, that then, and in that event,, the purchase of “ her by the said polín Fox should be held to be void ; and ££ also, as depending thereupon, the verdict in the action “ of trespass aforesaid; and that the said Nelson Ander~ c£ son be' decreed to be quieted in his purchase of the slave <£ aforesaid, and the injunction granted in this case be de- <£ dared to be perpetual»”

 4 Burn’s Eccles. Law 368, 369.

 Note by Judge Tucker. “ The onus probandi is always on the “ party having liberty to surcharge and falsify: for the Court always “ takes it as a stated account, and establishes it;, but, if any of the par- “ ties can shew an omission, for which credit ought to be given, that is “ a surcharge. Or, if any thing is inserted that is a wrong charge, he is “ at liberty to shew it, and that is a falsification: but that must be by “ proof on his own side." Per Ld. Hardw. 2 Vez. 566. Pitt v. Cholmondley. See also 2 Bro. 62. Brownell v. Brownell.

 2 Vez. 482.

 Ante, p. 69.

 3 Call, 568.

 2P. Wms. 148.

(Tf In this case, a doubt was suggested, whether, an executor could legally purs chase the property of his testator sold by himself though the sale were public, and necessary for the payment of debts ; but it appears, from the decree, that such sale and purchase (the salt: being necessary for the payment of debts,) would be confirmed if no fraud v» ere proved.